# Staunton.

## BOWMAN & ALS v. HICKS & ALS.

### SEPTEMBER 25TH, 1885.

1. REGISTRY—*Verbal sales of land.*—The statute in relation to the registry of contracts and deeds does not apply to verbal contracts for the sale and purchase of land:

2. COMPLETE PURCHASER—*Judgment against vendor—Case at bar.*—B. held adverse, open and notorious possession of land from 1849 to 1862, when D. asserted claim to it, and B. buys up his claim under verbal contract, paying his price in full, and remains in such possession until 1881, when creditors of D., by judgments obtained since 1862, sue to subject the land to their judgments :

HELD :

> Apart from B.'s title by such possession, he was a complete purchaser from D. before their judgments were obtained, and their liens never attached to the land.

Appeal, argued at Richmond and decided at Staunton, from decree of hustings court of Danville, in cause wherein S. D. Hicks, for himself and others, was plaintiff, and B. A. Davis and others were defendants. The object of the suit was to assert and satisfy certain judgments against said Davis, upon certain lands claimed and held by John Bowman and others under Peter Bowman.

Opinion states the facts.

*John Merritt* and *S. G. Whittle*, for the appellants.

*E. E. Bouldin,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

This is an appeal from a decree of the hustings court of the city of Danville, rendered July, 1882, in a suit in which S. D. Hicks, for himself and others, is plaintiff, and B. A. Davis and others are defendants.

The facts of the case, as disclosed by the record, are as follows: In 1848 or 1849, Peter Bowman entered upon the possession of a tract of land, containing one thousand acres, lying in Patrick county, Virginia, under a claim of purchase from M. D. Carter, deceased, agent for the heirs of Bullock. The said Peter Bowman and his son John resided on this land, and have held, occupied and enjoyed the same as their own, in an open and notorious manner, from 1848 or 1849, to the present time.

In the year 1862, one B. A. Davis set up claim to this land, when John Bowman, who was then on the land, and who, together with his father, Peter Bowman, had held and enjoyed exclusive and uninterrupted possession and use under claim of ownership, purchased the claim of said B. A. Davis, from B. A. Davis, for the sum of $3000 in Confederate money, to quiet his and his father's title. The said contract of purchase was in parol; he paid the purchase money in 1862; and remained and continued upon the land and in possession of the same as his own, uninterruptedly, to the institution of this suit, in July, 1881, when the bill (which is an amended bill) was filed by the appellees, who were judgment creditors holding liens upon the real estate of the said Beverly A. Davis, seeking to subject the lands of the appellants, as vendees of the said Beverly A. Davis, to the satisfaction of their unsatisfied judgment liens.

In February, 1864, the said John Bowman applied to, and received from, the said B. A. Davis, a receipt or title-bond, merely to show that he had purchased and paid for the land. This obligation, receipt or title bond was never recorded.

The appellants, J. A. Branch, Marcella Branch and Ellen

Branch, claim, as children and devisees of Olive Branch, a tract of 200 acres of land purchased by their said father, Olive Branch, by parol contract, in 1862, from the said B. A. Davis, which he, and they, claiming under him, have had possession, enjoyment and ownership of, exclusively and uninterruptedly, from 1862 till the filing of this amended bill, in July, 1881. The purchase money agreed to be paid for this tract was $1000, of which the sum of $643 was paid by the said Olive Branch to the said B. A. Davis, at the time of his said purchase by parol contract, in 1862.

Upon these facts, the court held that these aforesaid lands in the hands of the appellants, Bowman and Branch, are bound for the judgments against the said B. A. Davis, and decreed the sale and subjection of them to satisfy the judgment liens of the appellees. From this decree this appeal is taken.

We think the decision of the hustings court erroneous. The record shows no unpaid lien against B. A. Davis prior to 1862, when the appellant, Bowman, became the complete equitable owner of the land by his verbal purchase, and possession under it, and payment of the purchase money. He is a complete purchaser, entitled to the aid of a court of equity to call in the legal title in a suit for specific performance. *Preston's adm'r* v. *Nash*, 75 Va. 949; *Young* v. *Davis*, 31 Gratt. 309.

Judge Christian, in delivering the opinion of the court in *Young* v. *Davis*, *supra*, says: "These last-named purchasers were let into possession under parol agreements; and, having paid the purchase money, and being in a condition to call upon the vendor for specific execution before the judgment was rendered, upon the principles settled by this court in *Floyd, trustee*, v. *Harding*, and cases therein cited, the judgment cannot be enforced against these lands."

The pre-existing parol contract of 1862 being proved, it is immaterial to consider the paper of February 26th, 1864, given by B. A. Davis to John Bowman, at his request, whether it be a receipt, or memorandum, or obligation for covenants of title:

it was no part of the previously complete contract between them. It was witnessed by one witness alone, and had it been recorded by the clerk, it would not have been "duly recorded;" and would have given constructive notice to no one. *Turner* v. *Stip*, 1 Wash. 319; *Johnston* v. *Slater*, 11 Gratt. 321; *Davis* v. *Beazley*, 75 Va. 491. In the language of Judge Staples, in *Floyd, trustee*, v. *Harding*, 28 Gratt. 401, to have required Bowman to record said paper would have been to require him to "perform an impossibility:" "and to provide that a man's property may be taken for another man's debt, without the fault of the owner, and without the possibility of guarding against it by the exercise of the greatest diligence." The evidence in the record developed a claim of title in Peter Bowman, and in John Bowman claiming under him, thus putting complainants on their guard, and rendering it necessary for them to show that Davis's title to the land was superior to that of the Bowmans. Davis had never been in *possession* of the land, and his title was put in issue by the pleadings: and not a scintilla of evidence is in the record to prove it. His claim to title—never asserted by him, either as a party to the suit, or as a witness in the cause—stands upon the naked, unsupported allegation in the amended bill (filed by his after-obtained judgment creditors) that John Bowman purchased the land of Davis, as the origin or source of his title; but, neither in his answer nor deposition does John Bowman admit this allegation or fact; his statement is, that in 1862, Davis set up a claim to the land, then, and uninterruptedly in his possession since 1848–9, as his own property; when he bought the claim set up by Davis, in order to quiet his pre-existing title. But if it were admitted or proved, that Davis, though never in *possession*, was *entitled* to the land, it was not, and is not liable to the after-acquired judgments of the appellees, who are creditors of Davis, his vendor.

The evidence in the record leaves no room to doubt, that in 1862, John Bowman, by a contract in parol, to quiet his title, purchased whatever interest Davis had or asserted in the land;

continued in the possession from 1862, to the institution of this suit, in 1881, and had paid the whole of the purchase money. After this lapse of time, this bill having been filed in 1881, payment of the purchase money is a presumption of law. *Tinsley* v. *Anderson,* 3 Call, 329; *Booker* v. *Booker,* 29 Gratt. 605.

The hustings court erred in holding the lands in the hands of the appellants, Bowman and Branches, liable to the judgment liens of the appellees against Davis; and the said lands, under the decisions in *Withers* v. *Carter,* 4 Gratt. 407, and *Floyd, trustee,* v. *Harding,* 28 Gratt. 401, are free and exempt from such liability, except to the extent of the unpaid purchase money, admitted by the deposition and answer filed by the appellants, Branch, for the 200-acre tract purchased by Olive Branch. This balance, however, must be scaled, as the transaction was had in reference to Confederate treasury notes as a standard of value.

The decree complained of must be reversed and annulled.

DECREE REVERSED.